U.S. For the Use of BELCON, INCORPORATED, Appellant,

v.

SHERMAN CONSTRUCTION COMPANY and Seaboard Surety Co., Appellees,

v.

Lester BELCHER, Jr., and Lester Belcher, III, Third-Party Defendants.

U.S. For the Use of BELCON, INCORPORATED, Appellee,

v.

SHERMAN CONSTRUCTION COMPANY and Seaboard Surety Co., Appellants,

v.

Lester BELCHER, Jr., and Lester Belcher, III, Appellees.

Nos. 85–1767, 85–1768.

United States Court of Appeals, Fourth Circuit.

Argued July 14, 1986.

Decided Sept. 19, 1986.

William N. Rogers (Shaffer & Rogers, Rockville, Md., William N. Zifchak, Sasscer, Clagett, Channing & Bucher, Upper Marlboro, Md., on brief), for appellant/cross appellees.

Gerald I. Katz (Mark J. Stone, Katz, Flinn & Beagan, Vilnna, Va., on brief), for appellees/cross appellants.

Before HALL and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge.

Belcon, Incorporated ("Belcon") is a Maryland corporation acting as a subcontractor in a business relationship governed by the Miller Act, 40 U.S.C. § 270a–270d. Belcon appeals from an order of the district court entering judgment following a bench trial in a breach of contract action brought against the prime contractor Sherman Construction Company ("Sherman") and its surety, Seaboard Surety Company ("Seaboard"). The court held in Belcon's favor with regard to a portion of its claims against Sherman while denying recovery on its remaining allegations. Sherman cross-appeals the denial of its counterclaim brought against Belcon. Because we conclude that the findings of fact accompanying the district court's decision fail to satisfy the demands of Fed.R.Civ.P. 52(a), we remand for additional proceedings.

## I.

On August 5, 1982, Sherman entered into a contract with the United States Veterans Administration to develop a project known as Phase II, which consisted of 26,400 gravesites on 52 acres of the Quantico Marine Base at Quantico, Virginia. On August 10, 1984, Sherman, in conjunction with Seaboard, executed and delivered to the Veterans Administration a payment bond in the amount of $524,000.00 for the protection of all persons supplying labor and materials in connection with the prime contract as required by the Miller Act.

On August 20, 1982, Sherman entered into a subcontract with Belcon.[1] Under the contract, Belcon agreed to furnish and install turf grass seed on the Phase II project in accordance with the specifications provided by the Veterans Administration in the prime contract. The contract, as subse-quently amended, called for Belcon to receive $75,375.00 for its services.

In mid-September, 1982, Belcon arrived "on site" to commence work. At that time direct supervision of the field work was the responsibility of Lester Belcher, III, the son of Lester Belcher, Jr., the president of Belcon. Between September, 1982, and October, 1983, Belcon seeded the Phase II acreage on three separate occasions. The first seeding which occurred between September and December of 1982, and for which Belcon was paid, resulted in seed that either failed to germinate or failed to produce an acceptable stand of grass. The second seeding in May and June of 1983 achieved germination but still did not produce a sufficient growth of grass. The third seeding in October, 1983, performed after the execution of a contract change order, also failed to produce grass acceptable to the Veterans Administration.

Following the third seeding, Belcon, asserting that it had performed its full obligations under the contract, withdrew from the Phase II project. It subsequently tendered a demand for payment for the work done in connection with the second and third seedings. Belcon also requested payment for activities that it described as "extras" such as rock removal and the filling of washed out areas. Sherman denied that any additional sums were owed and maintained that Belcon had failed to satisfy the terms of the contract. Belcon then initiated a breach of contract action against Sherman in the district court seeking compensation from the payment bond issued by Seaboard.

The case came to trial on May 21, 1985. By agreement of the parties the jury was dismissed and the matter was tried to the court. In their respective presentations, the parties disputed both the nature of Belcons' obligations under the contract and the causes of any deficiencies in Belcon's performance.

---

1. The initial contract was between Sherman and Belcher Landscaping Company. During the term of the contract, Belcher Landscaping merged into Belcon, Incorporated. For purposes of clarity the subcontractor will be referred to uniformly as Belcon.

Specifically, Belcon argued that its duty under the contract was simply to install the grass seed in a fashion that would achieve germination. Although the younger Belcher admitted that a substantial portion of the seed planted in the first seeding did not germinate, he attributed that failure to the fact that he was directed by Sherman to seed the areas out of season as a measure to control erosion. The elder Belcher also contended that the poor results achieved in the second seeding was caused by Sherman's poor site preparation and by the fact that Belcon was required to use an inappropriate seed mix. Belcon renewed its claim that it was entitled to payment for both the second and third seedings as well as the "extras." Belcon requested compensation in the amount of $147,554.00.

In response, Sherman argued that Belcon was understating the extent of its contractual duties. Sherman noted that the subcontract incorporated by reference the Veterans Administration's specifications relating to landscaping at the Quantico National Cemetery. It was Sherman's position that the incorporated specifications imposed a duty upon Belcon to produce a stand of grass that would meet the approval of the Veterans Administration. Sherman contended that Belcon's failure, despite three attempts, and its subsequent withdrawal forced the employment of a replacement subcontractor at a cost to Sherman of $39,-214.60.

Sherman also disputed the younger Belcher's contention that he was directed to perform the first seeding out of season. It argued that Belcon's inadequate performance was caused by the younger Belcher's inexperience and by the company's failure to provide proper care for the planted seed. Sherman further argued that it was not liable for any "extras" because the activities allegedly performed were either Belcon's duty under the contract in the first instance or constituted unauthorized changes in the contract for which Sherman was not responsible.

At the conclusion of the case, the court announced its findings from the bench.

With regard to the first seeding, the court concluded that Belcher had not been ordered to plant out of season and had done so as a result of inexperience. The court specifically stated that the first seeding failed to achieve germination "because young Belcher, who really hadn't earned his spurs at that time planted too late." The court further noted that because the second seeding, supervised by the elder Belcher, was required to "overcome the deficit that was created by his son," Belcon was not entitled to compensation for that work.

The court allowed Belcon to recover for the third seeding which was done after the Veterans Administration approved an alteration in the seed mix used on the Phase II project. Judgment was entered on behalf of Belcon on that claim in the amount of $54,591.40, subsequently reduced by post-judgment motions to $46,903.00. The court made no specific ruling on Belcon's claim relating to the "extras." The court also denied, without explanation, Sherman's counterclaim for the sum expended in hiring a replacement contract.

This appeal followed.

### II.

On appeal, Belcon contends that the district court was "clearly erroneous" when it held that the younger Belcher planted the first seeding solely on his own initiative. Belcon further argues that the court's *sub silentio* denial of its claim for the "extras" was also "clearly erroneous." Alternatively, Belcon contends that as a result of the court's failure to make adequately detailed findings of fact, as required by Fed.R. Civ.P. 52(a), this case should be remanded for a new trial.

In its cross-appeal, Sherman argues that the court made sufficient findings to support its conclusion on the first seeding and that the denial of compensation for "extras" was proper. Sherman contends that the court's only major error lay in denying its counter-claim. Sherman maintains that the denial of its counterclaim must be reversed as clear error.

We find it unnecessary and indeed improper, for this Court to determine at this time whether any of the rulings by the district court are clearly erroneous. Such an appellate review can only be undertaken when the trial court has made its findings of fact with sufficient "detail and exactness," *E.E.O.C. v. United Virginia Bank/Seaboard Nat.*, 555 F.2d 403 (4th Cir.1977). It is readily apparent that findings of fact in this case do not meet that standard.

Fed.R.Civ.P. 52(a) requires that "[i]n all actions tried upon the facts without a jury ..., the court shall find the facts specifically and state separately its conclusions of law thereon." To satisfy the demands of Rule 52(a), a trial court must do more than announce statements of ultimate fact. The court must support its rulings by spelling out the subordinate facts on which it relies. *O'Neal v. Gresham*, 519 F.2d 803 (4th Cir.1975). Unless the trial court fully complies with Rule 52(a), appellate review becomes an exercise in conjecture.

In the present case the conflict between Belcon and Sherman turns upon their respective duties and obligations under the contract. The parties contested below, and have continued to dispute on appeal, the extent of Belcon's responsibilities for the Phase II project. It obviously makes a substantial difference whether Belcon was required to produce grass acceptable to the Veterans Administration, as Sherman argues, or whether its obligation was limited to achieving germination of the seed as it maintains. The district court, however, made no specific findings on this essential issue. We are left, therefore, with no alternative but to speculate as to why the court found, *inter alia*, that both Belcon's claim for extra compensation and Sherman's counter-claim were without merit.

The district court also appeared to recognize that its findings were insufficient. In a bench colloquy the court noted that:

> I reserve the right, because I am making sort of bench findings in the case, that if an appeal is noted, ... I then will make more detailed findings of fact that will be tied into a transcript of the case by page number and to the specific exhibits that are filed in this case. So that when it goes to the Fourth Circuit, they will have room service Rule 52 finding of facts and conclusions of law from the trial court that will be unassailable.[2]

In the face of the sparse findings of fact presently available and the district court's implicit recognition that more detailed findings were necessary under Rule 52(a), we decline to address any of the district court's rulings on the merits. Until the factual context of this dispute is fully developed, appellate review of any of the parties' contentions is premature.

### III.

Accordingly, we remand this case to the district court[3] with instructions to make the specific and detailed findings required by Rule 52(a).

REMANDED.

---

**2.** It appears from statements made at oral argument that no request was made of the district court to supplement its findings until after this appeal was filed. At that interval, the district court concluded that it no longer had jurisdiction.

We do not find it significant that no request for additional findings was made. It is clear from the language of Rule 52(b) that the duty to make findings of fact after a bench trial exists independently of any request by a party to the litigation.

**3.** We reject as meritless Belcon's suggestion that this case should be remanded for a new trial before a new judge. As we clearly indicated in *O'Neal*, the remedy for insufficient findings of fact is a remand with instructions to make the needed findings. We see no reason to depart from that course.