**In re Arthur P. McCAULEY, Debtor.**

**Julie–Lyn H. BANGERT,**
**Plaintiff/Appellant,**

**v.**

**Arthur P. McCAULEY,**
**Defendant/Appellee.**

Bankruptcy No. 87–1313–AB.
Civ. A. No. 89–0016A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 20, 1989.

---

John T. Donelan, John A. Mell, Alexandria, Va., for plaintiff/appellant.

H. Jason Gold, Valerie P. Morrison, Gold & Stanley, P.C., Alexandria, Va., for defendant/appellee.

## MEMORÁNDUM OPINION

ELLIS, District Judge.

### Background

In this bankruptcy appeal, the central issue presented concerns the dischargeability under 11 U.S.C. § 523(a)(5) of an $80,000 debt set forth in a final divorce decree. The pertinent facts are essentially undisputed and may be simply stated.

The parties to this appeal, Julie–Lyn Bangert and Arthur McCauley, were married in 1966, separated in 1985, briefly reconciled later in 1985, and finally divorced on May 1, 1987. Bangert remarried another that same day. During their twenty-one year marriage, the parties adopted two children, McCauley became a successful businessman, and Bangert was not employed outside the home. The parties never entered into a property settlement agreement. Instead, they litigated support, custody and property disposition in the Superior Court of Fulton County.

In November 1985, the Georgia court entered an interlocutory order awarding Bangert temporary, exclusive use of the marital home, temporary custody of the two minor children, as well as support and maintenance for herself and the children. The 1985 order also required McCauley to pay the mortgage payments on the marital home, certain listed debts and the country club monthly dues. Thereafter, in March 1986, a consent judgment order was entered which superseded the 1985 interlocutory order. The 1986 consent order purported to settle with finality the ownership of the marital home by awarding it to Bangert. This consent order also required McCauley to assume the house payments, to pay arrearages in child support, and to pay $2000 per month for future child support. The obligation to pay temporary alimony ceased. Then, in 1987, after a trial, a final decree was entered. It provided that McCauley was to pay (i) $750 in monthly support per child, (ii) $750 in monthly support and maintenance for Bangert, (iii) $9,378.77 for child support arrearages, (iv) certain medical expenses incurred for the children, and (v) $80,000 in monthly installments of $750, without interest, until paid in full.

On June 24, 1987, approximately two months after the final decree, McCauley filed a Chapter 7 petition in bankruptcy. Bangert thereafter filed a timely complaint objecting to the discharge of the various obligations contained in the Georgia court's final decree. She argued that these obligations were non-dischargeable because they were for "alimony to, maintenance for, or support" of Bangert and were "actually in the nature of alimony, maintenance, or support...." 11 U.S.C. § 523(a)(5). McCauley sought summary

judgment solely with respect to the $80,000 obligation. The bankruptcy court took the matter under advisement. Although no order was entered, it appears that the motion was thereafter denied as premature. Prior to trial, McCauley conceded and stipulated the non-dischargeability of the obligations to pay monthly child support, child support arrearages and medical bills. At trial, therefore, the dischargeability of the $80,000 obligation was the sole issue before the court. After hearing argument of counsel and after reviewing the 1985 and 1986 orders, the 1987 final decree, and the transcript of the Georgia court proceedings, the bankruptcy court concluded that the $80,000 obligation was discharged as it was a property settlement, and not in the nature of alimony, maintenance or support. This appeal followed.

### Analysis [1]

Pursuant to 11 U.S.C. § 727(a), a Chapter 7 debtor who complies with the Bankruptcy Code requirements receives a discharge of all pre-petition debts other than certain specified exceptions. Among those exceptions is 11 U.S.C. § 523(a)(5), which precludes discharge of debts to a spouse or child for alimony, maintenance or support if that debt is actually "in the nature of alimony, maintenance or support." [2] Resolving the question whether a debt falls within this exception for purposes of dischargeability under the Bankruptcy Code is a matter of federal, not state, law. *Goin v. Rives,* 808 F.2d 1391

(10th Cir.1987); *Long v. West,* 794 F.2d 928, 930 (4th Cir.1986); *Shaver v. Shaver,* 736 F.2d 1314 (9th Cir.1984). And, in this context, Bangert, as the party challenging discharge of the $80,000 obligation, has the burden of establishing that this amount was in the nature of alimony, support or maintenance. *Benich v. Benich,* 811 F.2d 943 (5th Cir.1987); *Long,* 794 F.2d 928; *Hunter v. Hunter,* 780 F.2d 1577 (11th Cir.1986); *see* Fed.R.Bankr. 4005.

Settled circuit authority makes unmistakably clear that it is the intention of the Georgia court in this case that determines whether payments are alimony, support or maintenance as distinguished from a property settlement. *See Long,* 794 F.2d at 931; *Benich,* 811 F.2d at 943 (court must determine true nature of debt regardless of characterization placed on it by parties' agreement or court proceedings); *Tilley v. Jessee,* 789 F.2d 1074 (4th Cir.1986) (true intent of the parties rather than labels attached to agreement controls characterization of the obligation); *Shaver,* 736 F.2d 1314 (court must look beyond the language of the agreement to the intent of the parties and the substance of the obligation); *Melichar v. Ost,* 661 F.2d 300, 303 (4th Cir.1981) (where the obligation is embodied in an agreement of the parties, the test is the parties' intention); *Shacter v. Shacter,* 467 F.Supp. 64, 66 (D.Md.1979) (substance not labels govern inquiry into parties' intention and parties may intend payment to be for support even if not so labeled and

---

1. This Court's jurisdiction rests on 28 U.S.C. § 158. The bankruptcy court's factual findings are subject to a clearly erroneous review standard, while its legal conclusions are reviewable *de novo* on appeal. For authorities on the clearly erroneous standard, *see* Fed.R.Bankr. 8013 and *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948) (discussing the standard in the context of the Federal Rules of Civil Procedure); *Kubicik v. Apex Oil Co.,* 884 F.2d 343 (8th Cir.1989) (discussing the standard in the context of Bankruptcy Rule 8013); *Sanyo v. Howard's Appliance Corp.,* 874 F.2d 88 (2d Cir.1989) (same). For authorities on the *de novo* review standard, *see United States v. Barlows, Inc.,* 53 B.R. 986 (E.D. Va.1984); aff'd 767 F.2d 1098 (4th Cir.1985); *Lowes of Virginia, Inc. v. Thomas,* 60 B.R. 418 (W.D.Va.1986).

2. 11 U.S.C. § 523(a)(5) reads as follows:

**§ 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that-. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

even if state law technical requirements for alimony are not met). And the determination of intention underlying the court decree or the parties' agreement is essentially one of fact. *Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984) (determination of parties' intention is a question of fact); *Cf. Melichar*, 661 F.2d at 303 (classification of an agreement under state law is an important factor in determining parties' intention).

 A wide range of factors may be pertinent to this intent inquiry, including whether the divorce degree contained another provision explicitly for alimony or support and whether, as is typically true of alimony, the obligation terminated on the death or remarriage of the receiving spouse. *See Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982) (existence of separate and distinct provisions in agreement regarding maintenance and property is a significant factor to be considered); *Tilley*, 789 F.2d at 1078 (obligations that survive despite remarriage of the obligee or death of the obligor are in direct contrast to the usual operation of marital support payments). A helpful bankruptcy court opinion lists eighteen such factors that may be taken into account in distinguishing between alimony, maintenance and support on the one hand and property settlement on the other. *See Coffman v. Coffman*, 52 B.R. 667, 674–75 (Bankr.D.Md.1985). Contrary to Bangert's contention, however, no authority or reason in principle requires a fact-finder to hear and assess evidence on every one of these factors. *See Yeates v. Yeates*, 807 F.2d 874 (10th Cir.1986) (fact that payment is necessary to maintain daily necessities indicates presence of support obligation); *Shaver*, 736 F.2d 1314 (factors suggesting support obligation include presence of minor children, imbalance of relative income of parties, whether obligation terminates on death or remarriage of recipient spouse, and nature and duration of obligation). Nor is there a fixed hierarchy of importance for these factors, or a precise weight assigned to any of them. Circumstances vary too widely to require this.

Instead, the choice of factors to consider and the weight they should be accorded, is uniquely a function committed to the discretion of the trier of fact. Where, as here, the task is to ascertain the intent underlying a court decree, it is appropriate and sufficient for the trier of fact to focus attention on the pleadings, the orders, the transcripts of the court proceedings, and on the language of the decree itself. *See West v. Bank of Commerce & Trusts*, 153 F.2d 566 (4th Cir.1946) (court adjudged the true intent of a decree on the basis of the language of the decree, pleadings, pre-trial conferences and arguments).

 The trier of fact in the instant case, the bankruptcy court, did precisely this. Its conclusion that the $80,000 obligation was not in the nature of alimony, maintenance or support was abundantly supported by the record, particularly by the terms of the final decree. The decree specifically identifies and segregates by paragraph each of the obligations the state court judge created. Paragraph six of the decree explicitly obligates McCauley to pay Bangert alimony commencing May 1, 1987 "for her *support, maintenance, and welfare* in the sum of $750 per month" (emphasis added). Significantly, this obligation terminates on Bangert's death or remarriage, a characteristic of true alimony. Paragraph three of the decree explicitly orders $750 per month in child support for each child. Like the alimony provision in paragraph six, this obligation is designated for the "support, maintenance, education, and health of the children." Paragraph seven explicitly addresses child support arrearages. Finally, in paragraph eight of the decree, a paragraph wholly separate from the provisions concerning alimony, child support and child support arrearages, the state court judge ordered McCauley to pay Bangert $80,000. Significantly, he did so in terms that reflect that the obligation was in the nature of a property settlement, not alimony, maintenance or support.[3] Given all this, and given fur-

---

**3.** The principal remarks made by the state court judge in ordering the payment of $80,000 are as follows:

ther that the state court judge is fairly deemed to know the difference between alimony and non-alimony, there was more than an adequate factual basis to support the bankruptcy court's conclusion that the $80,000 obligation was not in the nature of alimony, maintenance or support and therefore dischargeable. Far from clearly erroneous, this conclusion is clearly correct.

 Bangert also complains that the bankruptcy court erred in focusing solely on the state court record in declining to hear testimony from her, her brother and McCauley. This complaint is without merit. It misconceives the task of the bankruptcy judge in this context, which is to ascertain the intent of the state court judge with respect to the $80,000 obligation. Given this as the court's task, testimony from the parties as to what they intended is irrelevant. It is not their intent, but that of the state trial judge that controls. Similarly, testimony of other witnesses as to what the state judge intended would be inadmissible hearsay if based on the judge's extrajudicial statements (Fed.R. Evid. 802) and inadmissible incompetent speculation if based on the witnesses' surmise as to the judge's intentions (Fed.R. Evid. 602). In a colloquy with the bankruptcy court, Bangert's counsel appears correctly to have conceded this essentially indisputable point.[4] Beyond this, Bangert's counsel was asked at oral argument to specify what relevant testimony was precluded by the bankruptcy court's decision

to focus solely on the state trial court record. Two areas of testimony were identified in response, neither of which supports Bangert's argument here. First, counsel referred the Court to twelve facts set forth in the appellant's brief. It appears, however, that each of these facts was considered by the bankruptcy judge when he reviewed the state trial court record. For as Bangert's brief itself reflects, every one of the twelve facts is derived from that record. Second, Bangert's counsel contends that he would have elicited from McCauley certain facts concerning McCauley's tax treatment of the periodic payments relating to the $80,000 obligation and that this was relevant and important testimony. By no means is this so. Whether McCauley chose to deduct the periodic payments from his income may be some evidence of his view of the nature of the obligation, but it is not evidence of the judge's intention, which is controlling. In any event, the issue is mooted by the fact, revealed at the hearing, that McCauley has never made any payments and as such, has not accorded them any tax treatment. In sum, in the circumstances at bar, Bangert's arguments cast no doubt on the correctness of the bankruptcy court's decision to focus solely on the state court record.

 Bangert raises three additional issues. These issues are not mentioned in her "Designation and Statement of the Issues," but instead are raised for the first time in her brief.[5] As such, they are

---

According to the evidence presented in hearing, the wife has barrowed [sic] the sum of $60,000.00 from her brother and owes an additional $20,000.00 to the mortgage lienholder on the former marital residence. The husband shall repay the principal amount of $80,-000.00 (without the obligation of paying interest) to the wife on the installment basis. The first installment of $750.00 is due and payable on or before May 1, 1987 and a like payment shall be made on the first of each month thereafter until the entire sum of $80,000.00 is repaid to the wife.

4. The transcript reflects the following exchange on this subject:

THE COURT: If the judge refused to find or to make a support award because of lack of employment on the part of Mr. McCauley, that would have been in the order, would it not have been if the judge made that ruling?

MR. DONELAN: That's correct, your Honor. There is no ruling that was made by the Judge. That was just—

THE COURT: What evidence am I going to receive ... that the judge told somebody that he was going to do something or ... what?

MR. DONELAN: Which would be inadmissible and hearsay.

THE COURT: That's right. You just said that what our evidence is going to cover. You made a statement that I don't have any evidence for.

MR. DONELAN: I understand. I withdraw that, your Honor. I apologize if I confused the Court for that.

5. The three untimely issues are:

1. Whether the bankruptcy court failed to comply with Rule 52(a), Fed.R.Civ.P. relating to findings of fact and conclusions of law.

waived. *See Woods v. Pine Mountain Ltd.,* 80 B.R. 171 (9th Cir. BAP 1987) (appellant's failure to serve on appellee a statement of the issues to be presented on appeal waives those issues). Perhaps recognizing this, Bangert's counsel did not press them in oral argument. In any event, none of the issues, even if timely raised, warrant reversal.

 First, Bangert complains that the bankruptcy court's findings of fact are inadequate under Rule 52, Fed.R.Civ.P. *See United States ex rel. Belcon, Inc. v. Sherman Const. Co.,* 800 F.2d 1321, 1324 (4th Cir.1986) (Rule 52 requires that court find facts specifically and state conclusions of law separately). To be sure, a trial court "must do more than announce statements of ultimate fact ... [it] must support its rulings by spelling out the subordinate fact on which it relies." *Id.* This does not mean, however, that Rule 52 required the bankruptcy judge to issue findings of fact on every one of the 18 factors listed in *Coffman.* Indeed, the *Coffman* court itself did not do so; it focused instead on the circumstantial evidence that it found persuasive. It is sufficient, as here, for the bankruptcy court to focus on those factors it deems appropriate and to state its findings with respect to those factors. Ultimately, the test of adequacy for findings of fact is whether the findings permit meaningful review. The findings at bar, though not extensive, more than meet this standard.

Second, Bangert claims that McCauley brought on a second summary judgment motion without proper notice. This claim is unfounded. The case was decided on the merits at trial, not on a surprise summary judgment. Moreover, as noted, Bangert has been unable to point to any probative evidence that she was precluded from presenting to the bankruptcy court.

Finally, Bangert argues that the state court transcript was not properly introduced at trial. This argument is also baseless, if not disingenuous. Bangert herself listed the transcript as an exhibit. Such transcripts are plainly admissible. *See* Fed.R.Evid. 803(8) and 902(4). Apart from this, Bangert's argument is foreclosed by her failure to make a timely objection as required by the pretrial order, which also provided for the automatic admission of listed exhibits in the absence of objection.

This appeal is denied and the decision of the bankruptcy court is affirmed.

An appropriate order has issued.

---

2. Whether the bankruptcy court trial was procedurally defective and affected a substantial right of appellant.

3. Whether the Georgia court transcript and the argument of counsel taken from the trial transcript should be made part of the record on appeal.