**In re Edwin J. GRASMANN, Debtor.**

**Patricia GRASMANN, Plaintiff,**

**v.**

**Edwin J. GRASMANN, Defendant.**

**Bankruptcy No. 091–71526–21.
Adv. No. 091–7173–21.**

United States Bankruptcy Court,
E.D. New York.

Aug. 10, 1992.

Macco, Hackeling, Stern & Christensen, by Richard L. Stern, Huntington, NY, for plaintiff.

Long, Tuminello, Besso, Seligman & Quinlan by Harold Seligman, Bay Shore, NY, for debtor, defendant.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Patricia Grasmann, the former wife of the Debtor, filed an adversary proceeding against Edwin J. Grasmann, the Debtor and Defendant, contesting the dischargeability under 11 U.S.C. § 523(a)(5) of the debt owed her and is seeking the following relief:

(a) Summary judgment in the adversary proceeding in her favor pursuant to Federal R. Bankr.P. 7056;

(b) That this Court abstain from considering the Chapter 7 proceeding pursuant to 11 U.S.C. § 305(a); or, in the alternative,

(c) That this Court dismiss the Debtor's petition pursuant to Federal R.Bankr.P. 1017 for bad faith.

### Factual Background

On April 19, 1991 the Plaintiff was awarded a final judgment of divorce in which the Defendant was directed to pay her the sum of $157,500 [1] over a seven year period as her distributive share of the increase in the value of his earning potential during the marriage. Claiming that this amount was intended to be in the nature of alimony, support or maintenance, she is now moving for summary judgment in her adversary proceeding contesting the dischargeability of the debt listed in the Debtor's schedules.

The Debtor–Defendant opposes all the relief requested and contends that several material facts remain to be tried precluding summary judgment.

Edwin J. Grasmann, the Debtor, was divorced from Patricia Grasmann in New York State Supreme Court, County of Suffolk, on April 19, 1991. Justice Donald Kitson presided over the action. On February 28, 1991, at the conclusion of the divorce trial, Justice Kitson rendered a lengthy decision from the bench ("Decision"), incorporating Findings of Fact. Subsequently, he issued a Judgment of Divorce and Money Judgment ("Judgment") which reflected his Decision.

Justice Kitson's Decision set forth the following facts:

On July 23, 1982 Edwin J. Grasmann married Patricia Grasmann who had a son, born September 10, 1976, by an earlier marriage. In February, 1985 the Defendant adopted her son. On March 27, 1988 the plaintiff and defendant had a child together.

At the time of their marriage, Edwin J. Grasmann was about to commence his second year of medical school at the New York School for Osteopathic Medicine. During the next seven years of marriage he completed medical school, received a medical license, completed an internship and his residency at Stony Brook University Hospital. In July, 1988 the defendant commenced full-time employment at the offices of Dr. Alfred Ekstrom.

Prior to and throughout the marriage, Patricia Grasmann was employed as a respiration therapist at St. Charles Hospital in Port Jefferson, New York. She has an Associate Degree from Nassau Community College in Therapy received in or about 1972. Her income supported the family and enabled her husband to pursue and complete his medical studies. For the first three years of the marriage she was the sole wage earner in the family. In 1988, Patricia Grasmann earned $35,000. Prior to 1988, she earned between $20,000 and $25,000. In 1989, after she gave up full-time employment, it dropped to $7,715.

Dr. Grasmann had no income until 1985 when he graduated from medical school and earned $11,734. The following year his income went up to $28,242; in 1987 as a resident he earned $31,259. The following year, in 1988, his total income was $65,193 and it nearly doubled in 1989 to $121,429. That year he left the marital residence. Dr. Grasmann's potential income at the time of the divorce trial was between $200,000 and $250,000 annually.

The parties to the divorce stipulated that the value of Dr. Grasmann's enhanced earning power due to his medical degree was $450,000 in 1989.

Patricia Grasmann has a history of medical problems but she put in no evidence during the divorce proceeding that she is incapable of working full-time. If she works full-time she earns from $25,000 to $35,000 per year. She intends to work full-

---

**1.** Although the judgment was for 35% of $450,-000 ($157,500), the complaint asks for a declaration that $157,000 is nondischargeable. Further, the complaint only seeks a declaration that the debt owed to the plaintiff is nondischarge-able. A separate adversary proceeding has been filed by the plaintiff's matrimonial attorney contesting the dischargeability of the debt owed her for attorney fees in the amount of $15,000.00.

time when her youngest child reaches school age, provided her health improves. Her potential earning power nowhere approximates what her husband can earn.

In November, 1986 the Debtor and his wife bought a house for $102,000, in which there was an approximate equity of $30,000 at the time of the divorce. The Court directed that the house be sold and the proceeds divided giving the wife, however, the option of buying out her husband for $15,000 through an offset against her first year's distributive award.

In light of the contribution, both economic and noneconomic, which Patricia Grasmann made to the enhancement of the earnings of her husband during the marriage, Justice Kitson awarded her 35 percent of such enhanced earning capacity. Since the parties had stipulated that such enhanced capacity had a value of $450,000, she was entitled to $157,500, to be paid with 5½ percent interest over seven years, beginning July 1, 1991. Dr. Grasmann was given the option of paying off the full amount earlier.

Judge Kitson's opinion is divided into several sections. Various sections are headed "Maintenance," "Custody," "Visitation" and "Child Support." Mrs. Grasmann was awarded $50 per week for two years for maintenance "[b]ased primarily on the tender age of the infant issue and testimony of plaintiff's weakened medical conditions." She was given custody of the two sons and Dr. Grasmann was directed to pay $240 per week per child, or $25,000 per year until their demise or emancipation.

Counsel fees of $15,000 were awarded the wife's attorney to be paid directly to the attorney. The Court said that in deciding the issue who should pay the legal fees it was required to take into consideration the respective financial circumstances of the parties. In making this award, the Court said:

At the time of the commencement of this action, on or about May, 1990 plaintiff's employment was sporadic. Even when employed full-time plaintiff's earning potential is in the range of $25,000 to $35,-000. In addition, plaintiff takes care of

the parties two children. Plaintiff has used up her own savings and in addition has borrowed from members of her own family. The defendant, in contrast to plaintiff, earned $122,241 gross income in his 1989 federal tax returns and continues to practice medicine. The testimony at the trial indicated that in addition to defendant's present salary he is reimbursed or has paid for him directly, personal and business expenses including the cost of his health insurance, medical practice insurance, gasoline, car telephone, magazines, professional memberships and associations, hospital fees and other expenses.

Decision, p. 21.

At the time of the trial, Dr. Grasmann was 34, his wife was 38.

Three months after the final judgment of divorce was signed, Dr. Grasmann filed a voluntary petition with this Court under Chapter 7 of the United States Bankruptcy Code and a trustee was duly appointed to administer the estate in bankruptcy. His debts are largely limited to student loans and the amount owed his former wife and her attorney.

On December 3, 1991 Patricia Grasmann commenced this action against Edwin J. Grasmann to declare his obligation under the state court judgment to her a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(5).

In support of her motion for summary judgment, Patricia Grasmann asserts there are no material facts in issue. She relies upon the Decision issued by the State Supreme Court and the Judgment. She argues that it is clear from these documents that the State Supreme Court intended the distributive award for her support making that award a nondischargeable obligation.

The defendant opposes summary judgment on the ground that the following issues remain to be tried:

(1) that the divorce court found (a) that plaintiff has medical problems and was not capable of working full-time; (b) that her earning capacity was nowhere near his; (c)

that the Court determined the $50 weekly maintenance award only after factoring in the distributive award to the wife;

(2) that the distributive award granted plaintiff is nondischargeable as in the nature of alimony, maintenance and support.

## DISCUSSION

Summary judgment is appropriately granted where there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

There are no facts here in dispute. It is undisputed that Justice Kitson rendered the decision which he did. Within its four corners must be found his intention. There is nothing, therefore, to try and summary judgment is appropriate.

The issue before this Court is whether based on Justice Kitson's Decision and Judgment, Dr. Grasmann's obligation to pay his wife the amount awarded her by the state court as her share of his enhanced earning capacity is excepted from discharge under 11 U.S.C. § 523(a)(5).

The latter section makes nondischargeable a debt

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support;

11 U.S.C. § 523(a)(5)(B).

Is the obligation imposed on Dr. Grasmann by the state court in making an equitable distribution of the enhanced value of his earning power due to his medical degree "actually in the nature of alimony, maintenance or support?" If it is, it is not dischargeable; if it is something else, it is dischargeable.

■ Thus, if the obligation is determined to represent a property settlement, it is discharged under 11 U.S.C. § 727(a). *In re Birdseye*, 548 F.2d 321, 322 (10th Cir. 1977); *In re Freyer*, 71 B.R. 912, 917 (Bankr.S.D.N.Y.1987). Whether or not a debt is support or a property settlement is a question of federal bankruptcy law, not state law. *In re Long*, 794 F.2d 928, 930 (4th Cir.1986); *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984); *In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir.1983). Because dischargeability is favored under the Bankruptcy Code, the complaining spouse has the burden of establishing that an obligation is nondischargeable on the ground that it is actually in the nature of alimony, maintenance or support. *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986); *In re Calhoun*, 715 F.2d at 1111. The debt must first, be one " 'for alimony to, maintenance for, or support of [a] spouse or child,' i.e., intended as such, and second, be one that 'is actually in the nature of alimony, maintenance or support,' i.e., actually serves that purpose in light of the parties' circumstances." Henry J. Sommer & Margaret Dee McGarity, *Collier Family Law and the Bankruptcy Code*, § 604[2], (Lawrence P. King, ed, 1992) (footnotes omitted).

A distributive award under New York law, like that made here, has been found to be in the nature of support and, therefore, nondischargeable. *See, In re Raff*, 93 B.R. 41 (Bankr.S.D.N.Y.1988); *In re Brody*, 120 B.R. 696 (Bankr.E.D.N.Y.1991). *Raff* and *Brody* illustrate the difficult problem of characterizing awards under modern equitable distribution schemes which explicitly take into account the parties' needs and income in making a division of property. As opposed to earlier divorce laws under which the issues of support and property settlement were separate, at least in theory, most state's laws, like New York, blend the two concepts together to a large degree, forcing a close analysis of the parties'

total circumstances and the intent of the court in virtually every case.

■ What guides the bankruptcy courts in deciding whether marital obligations imposed by a judicial decree are nondischargeable alimony, maintenance or support or a dischargeable property settlement debts is the intent of the state court in fixing the obligation and the purpose of the obligation in light of the parties' circumstances at the time. *Shaver v. Shaver,* 736 F.2d at 1316; *In re Calhoun* 715 F.2d at 1109; *In re Brody* 120 B.R. at 696. If the court entering the judgment expressed no intent, the bankruptcy court must attempt to draw its intent from what the divorce court said.

As Bankruptcy Judge Marvin A. Holland pointed out in his scholarly and exhaustive opinion in *Brody,*

> The criteria discussed by courts in determining whether an obligation is a dischargeable property settlement or nondischargeable alimony, maintenance, or support are many and varied. However, they are applied with a view towards determination of intent; either intent as expressed or intent as inferred from the function which the obligation appears to fulfill, or by the conduct of the parties.

*In re Brody,* 120 B.R. at 698–699.

■ Some of the relevant factors which the bankruptcy courts consider include the following: the ability of the beneficiary (creditor) spouse to obtain gainful employment; the characterization given the award by a state court if any, *Forsdick v. Turgeon,* 812 F.2d 801, 803 (2d Cir.1987); the length of the marriage; the relative earning power of the parties; whether there was issue of the marriage, *In re Eisenberg,* 18 B.R. 1001, 1003 (Bankr.E.D.N.Y. 1982); the context in which the debt appears in the decree; whether the obligation terminates upon the death or remarriage of the obligee; and whether the obligation balances the income of the parties, *In re Brown,* 74 B.R. 968, 971 (Bankr.D.Conn. 1987).

New York's Domestic Relations Law provides for an award for "maintenance" and a "distributive award." N.Y.Dom.Rel.Law § 236B(1)(a), (b) ("DRL"). Maintenance is defined in the New York courts as payments made at fixed intervals "having regard for the standard of living for the parties established during the marriage, whether the party in whose favor maintenance is granted lacks sufficient property and income to provide for his or her reasonable needs and whether the other party has sufficient property or income to provide for the reasonable needs of the other and the circumstances of the case and of the respective parties." DRL § 236B(6)(a). Distributive award is defined as payments "in lieu of or to supplement, facilitate or effectuate the division or distribution of property ... payable either in a lump sum or over a period of time in fixed amounts." DRL § 236B(1)(b). The two concepts overlap, however, and the considerations applicable to each are similar. Both in making a distributive award and in ordering maintenance, the court is directed to take into consideration the income and property of the parties; the duration of the marriage; the age and health of both parties and the probable future circumstances of each party.

Furthermore, in determining an equitable disposition of property the court making the distribution is directed to consider any award of maintenance which has been made. DRL § 236B(5)(a). Similarly, in considering an award of maintenance the court is directed to take into account marital property distributed by the Court.

Justice Kitson took into consideration, as required by the Domestic Relations Law in making distribution of the value of the Debtor's enhanced earning power, factors which are appropriate to the consideration of support. He made detailed findings concerning the income and property of each party at the time of the commencement of the marriage and of the divorce action. Justice Kitson considered the length of the marriage and the health of the parties and noted that the husband's health was good, but that the wife had a history of medical problems. He noted that the wife had requested long term maintenance and had

presented some medical evidence in support of her request and made extensive findings as to the probable future financial circumstances of each of the parties.

While the payment that the debtor was directed to make is labeled a distributive award, from the tenor of the Decision and the considerations stressed by Justice Kitson, it is in the nature of support and serves that purpose. Where an obligation created by a judicial decision is claimed to constitute a nondischargeable debt for alimony, support and maintenance, it is the intention of the court issuing the decree that is controlling and the court's intention has to be gathered from its language. Although it would be appropriate to examine the transcript in the state court, neither side has urged the court to do so. *In re McCauley,* 105 B.R. 315 (E.D.Va.1989).

The fact that the state court decision discusses maintenance separately from the distributive award is not controlling. In view of the relative imbalance of the parties' income; the limited earning capacity of the wife; the presence of an infant child (disqualifying her or limiting her ability to accept full-time employment until he at least reaches school age), the maintenance award would surely have been more generous had Judge Kitson not been directed by the Domestic Relations Law to take into consideration the substantial amount she would receive over the next seven year period as her share of the enhancement of the earning ability of the Debtor.

*In re Raff, supra,* is virtually on all fours with the present case. In *Raff,* the state court made a distributive award to Mrs. Raff of 25% of the present value of her husband's medical degree and license obtained during the marriage. The Court awarded Mrs. Raff $178,538.00 payable in eight installments. Within days prior to the time that Dr. Raff was to pay the first installment, he filed for a petition under Chapter 7 of the Bankruptcy Code. Judge Schwartzberg held that a divorce award representing a percentage of the present value of the debtor's medical degree to be paid in eight yearly installments, but characterized as a distributive award by the

state court, was intended to provide support to the spouse and the debt was nondischargeable.

Judge Schwartzberg pointed out that the award by the state court was based on, *inter alia,* income and property of each party, the age and health of the parties and the probable future financial circumstances of both parties. Judge Schwartzberg found that the non-debtor spouse had worked to help the couple receive the debtor's future professional income, thereby earning a right to alimony and that therefore, the intention of the award was to provide support to the spouse.

Judge Schwartzberg pointed out the difference between a distributive award predicated on a medical degree and that arising from the division of the house. As in the *Raff* case, the state court in this case determined that the plaintiff was entitled to this award because of the support, sacrifice and services she rendered as a homemaker, not to mention the monetary contributions and the probable future status of both parties. Judge Schwartzberg points out:

> As with alimony, the future support of the plaintiff is at issue ... in terms of the spouse's expectation that her standard of living would be improved by aiding her spouse in acquiring a professional degree ... each spouse is entitled to acquire support and benefits from the enhanced standard of living the debtor is able to acquire ... similarly, a spouse is entitled to alimony and support to satisfy the expectation of income which he worked to help both the spouses to receive ... merely because the support is in the form of an annuity does not change the fact that it is in the nature of alimony and support.

*In re Raff,* 93 B.R. at 48–49.

In *In re Brody, supra,* the Court made a similar analysis and concluded that some portion of a distributive award of $1 million was intended to be nondischargeable support.

This Court finds in agreement with *Raff* and *Brody,* that the share of the enhanced earning ability of the Debtor awarded Pa-

tricia Grasmann by the state court is in the nature of alimony, maintenance and support and, therefore, constitutes a nondischargeable obligation. Summary judgment is appropriate because there are no material facts in controversy. The determination of the character of the distributive award made the plaintiff depends solely on Judge Kitson's Decision which is an undisputed fact.

The plaintiff has also asked this Court to abstain, pursuant to 11 U.S.C. § 305 from considering the Chapter 7 case or in the alternative dismiss the Debtor's petition for lack of good faith.

11 U.S.C. § 305 provides in relevant part:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

 While the language of Section 305 is clear, its application is narrow. Because dismissal under Section 305 must be in the best interests of *both* the debtor and the creditors, it has limited applicability to a voluntary Chapter 7 case like this. *In re 82 Milbar Blvd. Inc.*, 91 B.R. 213, 215 (Bankr.E.D.N.Y.1988). "Courts will have to exercise great care in using the discretion granted by section 305(a) to dismiss a case ..." *In re Luftek*, 6 B.R. 539, 548 (Bankr.E.D.N.Y.1980). Dismissal here is not in the best interest of the Debtor, therefore, the motion to dismiss is denied.

Likewise, dismissal pursuant to Fed. R.Bankr.P. 1017 is unjustified. Dismissal based on lack of good faith

[S]hould be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991).

The fact that Dr. Grasmann has resorted to Chapter 7 to discharge his debts to his wife is not alone a ground for concluding that he lacked good faith in filing for relief under the bankruptcy law.

## CONCLUSIONS OF LAW

This is a core proceeding. 28 U.S.C. § 157(a), (b)(2)(I).

There are no material facts in controversy.

The Debtor's debt to the plaintiff is in the nature of alimony, maintenance or support and, therefore, nondischargeable pursuant to 11 U.S.C. § 523(a)(5)(B).

Abstention under 11 U.S.C. § 305(a) is not in the best interest of the Debtor.

Dismissal under Fed.R.Bankr.P. 1017 for bad faith is unjustified.

Settle Order.