In re Hooshang **BONHEUR**, Debtor.

Laurie S. **BONHEUR**, Plaintiff,

v.

Hooshang **BONHEUR**, Defendant.

Bankruptcy No. 188–80568–352.

Adv. No. 188–0100–352.

United States Bankruptcy Court,
E.D. New York.

Dec. 21, 1992.

Citak & Citak by Donald L. Citak, New York City, for plaintiff.

DC37 Municipal Employees Legal Services Plan by Sheldon Barasch, New York City, for debtor/defendant.

Robert Musso, Brooklyn, NY, Chapter 7 Trustee.

DECISION AFTER TRIAL TO DETERMINE DISCHARGEABILITY OF MATRIMONIAL OBLIGATION UNDER 11 U.S.C. § 523(a)(5)(B)

MARVIN A. HOLLAND, Bankruptcy Judge:

The Plaintiff, the Debtor's ex-wife, seeks a determination that an equitable distribution award rendered by New York State Supreme Court is not dischargeable under 11 U.S.C. § 523(a)(5)(B). We find in favor of the Plaintiff.

These proceedings are subject to the bankruptcy court's jurisdiction under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Order of Referral of Matters to Bankruptcy Judges of this district, 69 B.R. 186. These are core proceedings under 28 U.S.C. § 157(b)(2)(I).

## FACTUAL BACKGROUND

The parties were married on May 7, 1972 in the State of New York. There are two children of the marriage; born on October 18, 1973 and September 9, 1977, respectively. At the time of the divorce decree (1986), Plaintiff, Ms. Bonheur, was 37 years old and the Debtor/Defendant, Mr. Bonheur, was 42 years old.

On March 31, 1986, the Honorable Angelo Graci, New York State Supreme Court Justice, granted a judgment of divorce pursuant to his memorandum opinion of February 7, 1986. This judgment was subsequently modified by the Honorable Martha K. Zelman, New York Supreme Court Justice, on January 28, 1988 and further modified by the New York Supreme Court, Appellate Division, Second Department, on June 6, 1988. Neither modification has any effect on the current dispute.

On March 2, 1988, Mr. Bonheur filed a petition under Chapter 7 of the Bankruptcy Code (Title 11 U.S.C.). On June 7, 1988, Ms. Bonheur filed an adversary proceeding asking the Court to declare the equitable distribution award, attorneys fees, and child support payments non-dischargeable under § 523(a)(5) of the Bankruptcy Code.

On July 26, 1989, Ms. Bonheur filed a motion for partial summary judgment on her first cause of action, i.e., the non-dischargeability of debts under § 523(a)(5). On September 11, 1989, the Court granted that motion in part, holding the child support payments and attorneys' fees non-dischargeable. Non-dischargeability of the equitable distribution award was left for a hearing.

The hearing was held on January 11, 1990. The Court delayed the decision, however, in part because the parties delivered the relevant transcript to the Court only in late January 1991. At the January 1990 hearing, the Court allowed the parties to present relevant evidence which had been previously presented to Justice Graci.

The state court divorce proceedings were contested proceedings, and the judgment of divorce did not incorporate any separation agreement or settlement entered into between the parties. In his judgment, Justice Graci made the following relevant findings of fact:

(a) Ms. Bonheur earned $21,000 per annum and Mr. Bonheur earned $45,000 per annum.

(b) Both Mr. and Ms. Bonheur are in good health and are college graduates with advanced training in their fields of endeavor.

(c) Ms. Bonheur is a teacher for emotionally disturbed children; Mr. Bonheur is employed as a forensic psychologist.

(d) Ms. Bonheur is self-supporting and, barring any extraordinary change of circumstances, will continue as such.

Justice Graci decided and held, in relevant part, that:

(i) "[P]laintiff receives no maintenance at this time because the Court considers that her income and allowance under equitable distribution hereunder makes her self-sufficient."

(ii) Ms. Bonheur obtained custody of the children subject to Mr. Bonheur's visitation rights. The Court ordered Mr. Bonheur to pay child support which was modified by the Appellate

Division to the sum of $188 a week for both children.

(iii) Ms. Bonheur's equitable award is one-half of the marital property valued at $32,290.75, to be paid in five equal annual installments, with a nine percent interest per annum, beginning one year after the date of entry of the divorce judgment.

Entitlement to the marital residence is not in dispute; the state court held it was not marital property.

At the evidentiary hearing held before this Court, Ms. Bonheur's testimony showed that during the time relevant to the matrimonial proceedings, her essential day-to-day expenses were as follows:

Monthly rent expense—$836

Monthly utilities expense—$120

Monthly expense for furniture and household items—$300

Monthly medical and dental expense—$60

Monthly expense for fire and theft insurance—$40

Monthly expense for food—$450

Monthly clothing expense—$250

Monthly expense for children's activities (Hebrew school, YMCA—swimming and piano lessons)—$255

Monthly expenses for summer camp—$100

Monthly expense for laundry and dry cleaning—$90

Monthly expense for transportation—$100

Monthly expense for lunches the children ate at school and the Plaintiff ate at the school where she taught—$70

Monthly expense for entertainment, vacations, babysitting and birthday parties—$200

Ms. Bonheur's total monthly expenses were, therefore, $2871. Her gross annual income was $21,000 or $1750 per month, making her net monthly income $1100. In addition, she testified that she had no savings account, stocks, bonds, or institutional investments of any kind, that she owned no real estate, and that she did not contribute any monies to a pension plan.

Justice Graci found that Mr. Bonheur had an annual gross income of $45,000. Ms. Bonheur testified that Mr. Bonheur had a pension plan, savings plan, and stock portfolio worth about $35,000 at the time of the divorce.

## DISCUSSION OF THE LAW

The general purpose of the bankruptcy code is to provide the debtor relief from indebtedness by the discharge of "virtually all his debts" with only a few exceptions. *Forsdick v. Turgeon*, 812 F.2d 801, 802 (2nd Cir.1987). Those exceptions are enumerated in 11 U.S.C. § 523. Most relevant to the present dispute, is the subsection which provides that a discharge under the code does not discharge an individual debtor from any debt:

(i) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—* * *

(ii) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support * * *.

11 U.S.C. § 523(a)(5).

■ Courts are in general agreement that the phrase "in the nature of alimony, maintenance, or support" simply means a divorce decree or settlement provision which, at the time of the divorce, functioned as support. *In re Yeates*, 807 F.2d 874 (10th Cir.1986); *In re Williams*, 703 F.2d 1055 (8th Cir.1983); *In re Melichar*, 661 F.2d 300 (4th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982); *In re Busconi*, 140 B.R. 308, 311 (Bankr.D.Mass.1992). This is in contrast to the type of award which is considered primarily or exclusively property division. A debt in the nature of support is non-dischargeable, while property division, like most other debts, is subject to the effect of a bankruptcy discharge.

■ For purposes of uniformity, what constitutes non-dischargeable support as opposed to dischargeable property division is determined under federal bankruptcy law, not state law. *Forsdick, supra* at 802, citing H.R. REP. (1977), *reprinted in* 1978 U.S. CODE CONG. & AD.NEWS 5787, 6320. However, there is no federal divorce law, so bankruptcy courts have had to fashion their own standards to differentiate between support and property division.

■ One approach to this problem has been to list factors which a court should consider in making its determination. *See generally In re Goin*, 808 F.2d 1391 (10th Cir.1987); *In re Shaver*, 736 F.2d 1314 (9th Cir.1984); *In re Coffman*, 52 B.R. 667 (Bankr.D.Md.1985); *In re Vickers*, 24 B.R. 112 (Bankr.M.D.Tenn.1982). Predictably, as the number of cases in this area has grown, so has the number of factors on the list. Some of these factors have been borrowed from state law. Others are tailored specifically to the fact situations presented by their particular cases. In general, however, they are all designed to help determine the intent of the divorce court or the parties as to the function of an award, and when intent is difficult to ascertain, at least the function of the award as manifested by the circumstances of the parties. As summed up by Sommer and McGarity in a leading treatise, *Collier Family Law and the Bankruptcy Code*, to qualify as support for non-dischargeability purposes, a debt must be, first of all, ' "for alimony to, maintenance for, or support of spouse or child," *i.e.*, intended as such, and second, be one that "is actually in the nature of alimony, maintenance or support," *i.e.*, actually serves that purpose in light of the parties' circumstances.' Henry J. Sommer & Margaret Dee McGarity, *Collier Family Law and the Bankruptcy Code*, § 604(2) (Lawrence P. King, ed., 1992) (footnotes omitted). Sommer and McGarity continue at another point:

> Probably the most important factor looked to by courts deciding the dischargeability of marital obligations, both to assess the intentions of the parties and to decide whether the actual function of an obligation is to provide support, is the financial situation of the parties at the time the obligation is agreed upon or decided by a court. If the obligee spouse or former spouse would have had difficulty in providing for himself or herself and the children of the parties, if any, absent the obligation, it is likely that the obligation will be found to be in the nature of alimony or support regardless of how it is structured or labeled.

*Id.* at par. 6.04[4].

■ Characterization, then, of the award by the divorce court or the parties is not, by itself, dispositive. *Gianakas v. Gianakas*, 917 F.2d 759 (3d Cir.1990); *Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989); *Harrell v. Sharp*, 754 F.2d 902, 906 (11th Cir.1985); *Williams v. Williams*, 703 F.2d 1055, 1057 (8th Cir.1983); *See also, In re Grasmann*, 1992 WL 367472 (Bankr. E.D.N.Y.1992); *In re Brody*, 120 B.R. 696 (Bankr.E.D.N.Y.1991); *In re Raff*, 93 B.R. 41 (Bankr.S.D.N.Y.1988) (Distributive awards under New York law found to be in nature of support.); *In re Busconi*, 140 B.R. 308 (Bankr.D.Mass.1992) (Award labelled "alimony" in prenuptial agreement found to be in the nature of dischargeable "property settlement.")

The cases cited immediately above illustrate the difficulty in separating the two types of awards under modern equitable distribution schemes which explicitly take into account the parties' needs and income in fashioning a division of property. *In re Grasmann*, 1992 WL 367472 (Bankr. E.D.N.Y.1992); Sheryl L. Scheible, *Bankruptcy and the Modification of Support: Head Start, or False Start?*, 69 N.C.L.Rev. 577, 587 (1991). Under New York's system, for instance, a divorce court must consider the needs and income of the parties before awarding property. Before awarding support, the court must similarly take into account any property owned by one or the other party. D.R.L. § 236(B). Implicit in the process is a recognition of the role an award of property can play in providing support. This represents a fundamental change from the traditional pur-

pose of awards of property and alimony under earlier divorce laws.

Under English Common Law, a wife's interest in her husband's property did not arise unless and until her husband predeceased her. Similarly, in many states in this country, a married woman could not own property in her own name at all until relatively recent times. Women were also historically discouraged from pursuing such formal education or other preparation as would allow them to earn a regular income independently of their husbands. Scheible, *supra*, note 32 at 583. Those women who did have such preparation were presumed and expected by society to abandon their professions once they married to provide full-time housekeeping services for their husbands. Correspondingly, their husbands had a common law duty to support them. Once divorced, however, most women were left without an independent means of support outside of fairly menial occupations. This gap was filled by the imposition of alimony which served to continue and preserve a husband's common law duty to support his wife. *Id.* at p. 583. While in many other parts of the world a husband could end such a duty to his wife by merely choosing to end the marriage, at English Common Law, a husband was only relieved of the duty of support, in whole or in part, if his wife were found to be at fault for the dissolution of the marriage. *Id.*

The sole object of alimony was to provide food, clothing, habitation, and other items necessary for support at the level to which the wife was previously accustomed. See Mary Jane Connell, Note, *Property Division and Alimony Awards: A Survey of Statutory Limitation on Judicial Discretion*, 50 Fordham L.Rev. 415, 418–9 (1981). The traditional model of a bankrupt ex-spouse, at least in theory, was that of a man who lost his property to creditors but continued to be able to support himself and his ex-wife because of the fresh start afforded him in bankruptcy. Hence the Congressional policy that debts resulting from a division of property are to be forgiven, while debts to a former spouse resulting from an award of alimony, maintenance, or support are not.

The fundamental changes to society and to family law in the United States in the last couple of decades, however, have rendered the above model almost completely inapplicable. The majority of married women are gainfully employed outside their homes. The duty of support is a mutual one, extending to both spouses. Scheible, *supra*, note 23 at 582, note 33 at 583. The trend in state divorce law is to de-emphasize or eliminate the concept of fault altogether. All states have adopted some form of equitable distribution primarily based on need and other equitable principles rather than fault. *Id.* note 56 at 588. Furthermore, property is often awarded in lieu of regular alimony or maintenance payments with the object of ensuring that an ex-spouse will become or continue to be self-supporting.

"Contemporary divorce law not only terminates a couple's marital status, but encourages conclusion of their economic interrelationship as well. Increasingly, since the widespread adoption of equitable distribution of property schemes, property is employed as a substitute for alimony and provides a dependent spouse a means of self-support. Although the theory of property division is based on an allocation of assets acquired during marriage, equitable division principles frequently take into account factors traditionally considered in awarding alimony."

*Id.* at 587–588.

As mentioned before, this latter statement is certainly true in New York, although the term "alimony" is no longer in use. The terms "maintenance" or "temporary maintenance" are used instead. "Maintenance" is defined as "payments to be paid at fixed intervals for a definite or indefinite period of time, but an award of maintenance shall terminate upon the death of either party or upon the recipient's valid or invalid marriage." D.R.L. § 236(B)(1)(a). "Distributive award" is defined as "payments ... in lieu of or to supplement, facilitate, or effectuate the division or distribution of property ... payable in either lump sum or over a period of time in fixed amounts." D.R.L.

§ 236(B)(1)(b). Among the many factors a New York court considers in awarding maintenance are: the income and property of the respective parties including marital property distributed, and the present and future earning capacity of both parties. D.R.L. § 236(B)(6)(a). In fashioning a distribution of property, the court considers the income and property of each party at the time the action was commenced, and any award of maintenance as well. D.R.L. § 236(B)(5)(d).

## APPLICATION OF THE LAW

Mr. Bonheur argued at the bankruptcy court hearing that the award characterized by the state court judge as a distributive award could not be found to be in the nature of support by the bankruptcy court, because to do so would constitute a retrial of the same issues reaching a contrary result. He argued, in essence, that the state court justice's characterization of the award is binding on the bankruptcy court and, therefore, the hearing was unnecessary. Tr. of 1–11–90 hearing, p. 4, Lines 7–16. This argument is not well taken.

The divorce court made both findings of fact and conclusions of law. The Defendant was partially correct when he argued that a rehearing to determine the facts was unnecessary. Findings of fact made by Justice Graci as to the property, income, and expenses of the parties remain undisturbed. The amount of award granted likewise remains undisturbed. However, all the relevant evidence heard by him in order to come to his decision in the divorce case was not subsequently presented to the bankruptcy court until the hearing in this adversary proceeding. In the absence of this evidence, a determination of the intended nature of the award might not have been possible. It was for this reason the hearing was held before the bankruptcy court.

■ The conclusions of law reached by Justice Graci also remain undisturbed. However, none was made by the state court with regard to the issue of non-dis-

chargeability. A state court may exercise concurrent jurisdiction with a federal court on the issue of non-dischargeability, but there must be a bankruptcy case pending either at the time or before the state court addresses the issue.[1] Mr. Bonheur did not file his bankruptcy petition until two years following the decree of divorce. While Justice Graci could have made findings of fact keeping federal law standards in mind, he could not have reached a legal conclusion regarding non-dischargeability because the issue was never before him. Furthermore, even if it had been before him, merely categorizing the award as an equitable division of property would not have sufficed. The issue was not addressed by Justice Graci and it is properly before this Court now.

■ Ms. Bonheur argued that the facts as found by Justice Graci showed Ms. Bonheur's income, including the award for child support, was not sufficient to meet her needs and those of her children. Justice Graci granted no award denominated as maintenance only because of his finding that Ms. Bonheur would be self-supporting if her award under equitable distribution were added to her income from other sources. According to Ms. Bonheur, then, this demonstrated that Justice Graci intended the equitable distribution award to function as support.

This Court finds Ms. Bonheur's arguments persuasive. Nothing in New York's statutory scheme prohibits granting a distributive award for the purpose of support. On the contrary, among the factors a court considers in granting the award, are the income of the recipient and any award of maintenance. This suggests the drafters of the statute contemplated such a function for the award.

Other distributive awards under New York law have been found to be in the nature of support. *In re Grasmann*, 1992 WL 367472 (Bankr.E.D.N.Y.1992); *In re Brody*, 120 B.R. 696 (Bankr.E.D.N.Y.1991); *In re Raff*, 93 B.R. 41 (Bankr.S.D.N.Y. 1988).

---

1. The Advisory Committee Note to Bankruptcy Rule 4007(b) states that jurisdiction over dischargeability determinations under § 523(a)(5) "is held concurrently by the bankruptcy court and any appropriate nonbankruptcy forum." F.R.B.P. 4007(b) (1992). *See, also,* 3 L. King, *Collier on Bankruptcy,* § 523.15(6) (15 ed. 1989).

In the present case, evidence heard by Justice Graci showed that Ms. Bonheur's net monthly income from her salary was $1100. Monthly child support came to $808 ($188 per week) for a total net monthly income of $1908. Her expenses and those of her children totalled $2871, which left her a shortfall of $970 per month or $11,-640 per year. Justice Graci ruled that an equitable distribution award of five annual installments of $6458 with nine percent interest, together with her income, would make Ms. Bonheur self-sufficient. The unmistakable implication of this statement is that, without the award, Ms. Bonheur would not be self-sufficient. The evidence regarding her financial situation at the time of divorce also showed she could not meet her expenses without assistance.

This Court finds, therefore, that the equitable distribution award of $32,290.75, as granted in the divorce decree to Ms. Bonheur, is in the nature of support and is a non-dischargeable debt of Hooshang Bonheur, the Debtor/Defendant in this Chapter 7 bankruptcy case.

Ms. Bonheur is directed to settle an order on ten days notice consistent with this opinion.